

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 26, 1951

Hon. J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. V-1195

Re: Authority of the State Com-
missioner of Education in
recomputing the economic
index required by the Foun-
dation School Program Act
(S. B. 116, ch. 334, Acts 51st
Leg., R.S., 1949).

Dear Sir:

Your request for an opinion relates to the authority of
the Commissioner, with the approval of the State Board of Educa-
tion, in recomputing the economic index for distribution of local
fund assignments in the administration of the Foundation School
Program. The questions you present are paraphrased as follows:

1. Was it the intention of the Legislature to re-
quire that local fund assignments total $45,000,000 each
year?

2. Does the Commissioner, with the approval of
the State Board of Education, have authority to make
an adjustment in the economic index for any county due
to a "sudden marked decline in economic activity in a
county," and, if so, would it be necessary for an adjust-
ment to be made in the economic index for each of the
other counties in the State in order to provide the total
of $45,000,000 in local fund assignments?

3. If in answer to the second question you hold
that the Commissioner may make adjustments for "sud-
den marked decline in economic activity," would the
reduction in local fund assignments in a county be paid
out of the Foundation School Fund?

4. If adjustments may be made for "sudden marked
decline in economic activity," may the Commissioner
grant an adjustment which would result in any school dis-
trict being required to raise less money than the amount
to be secured by applying the maximum maintenance
rate against State and County valuations?

Hon. J. W. Edgar, page 2    (V-1195)

5. Is the Commissioner limited to the use of the latest single publication giving data on the various factors to be utilized and weighted in determining the economic index, or may a series of the latest official publications and reports of such agencies be used and may the Commissioner decide which years are sufficiently "recent" to furnish reliable data?

6. May the Commissioner, with Board approval, reconsider the economic index adopted on March 5, and recompute the index for the year 1951-1952 and promulgate such new index to the counties?

7. May the Commissioner, with Board approval, make an adjustment in the economic index of a county where there has been a "sudden marked decline in economic activity" and amend the economic index for any given year and establish a new index for all of the counties in view of the adjustment?

With respect to your first question:

Obligations of school districts to provide financial support for the Foundation School Program were fixed by the 51st Legislature by the enactment of Senate Bill No. 116 (Art. 2922-16, V. C.S.). This act (Article VI, Sec. 2) provides in part:

"The sum of the amounts to be charged annually against the local school districts of the State toward such Foundation School Program shall be Forty-five Million ($45,000,000.00) Dollars. . . ."

After the $45,000,000.00 local effort requirement has been used in computing the basic formula for sums to be raised by each district, there are some reductions allowed to school districts in certain situations. For instance, Section 5 of the Act provides that the amount of local funds initially determined against a district may be reduced if it contains designated special tax exempt land, or if the local funds obligation assigned is greater than the tax yield from the maximum legal levy on the basis of State and county tax valuations. To such extent the Act does not require the total annual assignment of $45,000,000.00 to be raised by local districts.

On the other hand, and more important to this opinion, is the fact that $45,000,000.00 is the basic total amount which the Legislature has set to be used in computing the economic index for

all counties of the State for each four year period. For this purpose, the total amount of $45,000,000.00 must be used just as though that full total amount was required to be raised by the State's local districts each year.

With respect to your second question, you have advised that a new economic index has been computed for each county of the State using the weighted factors prescribed for the four year period beginning with the 1951-1952 scholastic year. The new index was adopted March 5, 1951. You ask if you may make a reduction for a county "due to a sudden marked decline in economic activity" without readjusting all other counties so as to require a total of $45,000,000.00 from local sources.

The Act (Art. VI, Sec. 3) provides in part:

"... The economic index for each county shall be based upon and determined by the following weighted factors:

a. Assessed valuation of the county--weighted by twenty (20);
b. Scholastic population of the county--weighted by eight (8);
c. Income for the county as measured by: Value added by manufacture, value of minerals produced, value of agricultural products, payrolls for retail establishments, payrolls for wholesale establishments, payrolls for service establishments weighted collectively by seventy-two (72).

"The economic index determined for each county for the purposes of this Act shall be used for a period of four (4) years, beginning with the 1951-52 school year, and the State Commissioner of Education, subject to the approval of the State Board of Education, shall recompute a new such economic index each four (4) years, taking such information from the most recently available official publications and reports of agencies of the State of Texas or the Federal Government. Provided that should there be a sudden marked decline in the economic activity in a county, an adjustment of the county's economic index may be made by the State Commissioner of Education, subject to the approval of the State Board of Education."

You ask our opinion as to what was meant by the Legislature in writing this last proviso into the Act. Clearly, this proviso must be read with attention focused on the language of the whole act, particularly that of Section 3 of Article VI, and effect given to each provision. Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680 (1932); 39 Tex. Jur. 209, Statutes, Sec. 113.

The following language from the opinion of the court in Henderson v. United Fidelity & Guaranty Co., 10 S.W.2d 534 (Tex. Comm. App. 1928), at page 536, is a concise statement of this rule of construction:

> " . . . In construing statutes, as well as every other written instrument, it is the duty of the courts to give effect to every word, phrase and sentence in such way as to harmonize the meaning of each such word, phrase, or sentence with the entire statute or instrument, if possible."

It will be noted from the portion of Section 3 quoted above that the Act requires the Commissioner to use "information from the most recently available official publications and reports of agencies of the State of Texas or the Federal Government." This language immediately precedes the proviso, the true meaning of which we must ascertain in order to answer your question.

In view of the language of this proviso and that of the clause which precedes it, and in the light of the purpose the Legislature sought to accomplish by the adoption of the Act, we think that the effect of the proviso is to limit or qualify the other language of the Section so as to authorize the Commissioner to consider information with respect to "a sudden marked decline in the economic activity in a county" from reliable sources other than "the most recently available official publications and reports of agencies of the State of Texas or the Federal Government" in recomputing the new four year index, if the latest official publications and reports do not reflect such information.

This interpretation is strengthened by the fact that, as you have advised, information as to some of the weighted factors is available at four year intervals only, of which fact we must presume the Legislature had knowledge at the time the Act was adopted. Imperial Irr. Co. v. Jayne, 104 Tex. 395, 138 S.W. 575 (1911); 39 Tex. Jur. 248, Statutes, Sec. 132. Information from the latest official publications and reports may not be sufficiently current to reflect a sudden marked decline in economic activity, and unless the Commissioner can look to other reliable sources of information,

Hon. J. W. Edgar, page 5    (V-1195)

it might not be possible to compute an index accurately indicating the taxpaying ability of each county.

It has been urged by some that the proviso applies not to the source of information for the four year economic index but authorizes you to recompute and reduce a single county's economic index at any time during the four year period due to "sudden marked decline in economic activity." This would reduce the total $45,000,-000.00 basic sum to be charged annually against the State's local districts, or require a recomputation for all counties so as to make up for the reduction given a single county.

To so construe the proviso would make the Foundation School Program unwieldy, if not unworkable, and would superimpose upon the Act a meaning not contemplated by the Legislature. If the Act were interpreted to mean that the Commissioner is authorized or directed to recompute or "adjust" the economic index each year or more often in response to requests of counties in which it is contended there has been a "sudden marked decline in economic activity," the whole purpose of the Act, in time, could be thwarted.

We do not believe the lawmaking body contemplated that an adjustment of the county economic index would be made more often than every four years. Our view in this is supported by plain and unambiguous language found elsewhere in Section 3:

"The economic index for each county for the purposes of this Act shall be used for a period of four (4) years, . . ."

The act confers no authority upon the Commissioner to recompute the economic index and make adjustments reflecting "sudden marked decline in economic activity" except to the extent that such adjustments may appear necessary when recomputing a new four-year index. No authority is granted to amend or change the economic index of a county at any other time.

The Legislature wisely provided ample safeguards to make sure that local funds will not be required of districts in excess of taxpaying ability. These safeguards, which follow, render unnecessary amendment of the county economic index at intervals shorter than four years.

Paragraph 4 of Section 5 of Article VI provides:

"Provided that if the revenue that would be derived from the legal maximum, local maintenance

school tax is less than the amount that is assigned to
a school district according to the economic index, and
if such property valuation is not less than said prop-
erty is valued for State and county purposes, such les-
ser amount shall be the amount assigned to be raised
by such school district."

To further insure that local fund requirements not ex-
ceed taxpaying ability, the Legislature also provided in Paragraph
3 of Section 5 of Article VI:

"Provided, however, that in any district contain-
ing State University-owned land, State-owned prison
land, Federal-owned forestry land, Federal-owned mil-
itary reservations or Federal-owned Indian reservations,
the amount assigned to such school district shall be re-
duced in the proportion that the area included in the
above-named classifications bears to the total area of
the district. . . ."

We also direct attention to paragraph 13 of Section 5
of Article VI which reads:

"If there has been a marked increase or decrease
in the assessed valuation of a school district within a
county, and if the County School Board certifies that
the use of the county and school district valuations for
the preceding year in determining local fund assign-
ments to the school districts in the county would be in-
equitable, and recommends a different distribution of
the county total than that made by the State Commis-
sioner of Education, such recommendations, subject
to the approval of said Commissioner, shall become
and be the lawful local fund assignments to such dis-
tricts."

Since the Legislature specifically set the sum of total
local fund requirements at $45,000,000.00 to be raised by all the
State's school districts and set that sum as the total to be used in
figuring county economic indexes without any provision for recom-
putation more often than every four years, we are compelled to hold
that its proviso in Section 3 concerning "sudden marked decline in
economic activity" relates not to computation of new county econom-
ic indexes oftener than every four years, but relates solely to the
sources used for computing county economic index for each four
year period.

With respect to your third and fourth questions, we refer you to our answers to your first and second questions.

With respect to your fifth question:

The language of Section 3 of Article VI is clear with respect to information sources to which the Commissioner must look. He is directed to use the latest official reports available in computing the new economic index, but we find nothing in this or any other provision of the act that limits the Commissioner to the use of a single publication or report. Latest reports of one or several agencies giving the information desired may be used. It is our view, however, from an analysis of this language, that the Commissioner is not authorized to determine what years are sufficiently recent to furnish reliable data. He must use "the most recently available official publications and reports," except as otherwise provided in the last proviso of Section 3 in order to give effect to "sudden marked decline in the economic activity."

With respect to your sixth question:

The Act does not fix a definite date for the adoption, release, or publication of a new county economic index for the ensuing four year period. It appears, therefore, that the requirements of the statute are met when a new index is released to the districts or counties on a date allowing sufficient time for making the tax rolls. If sufficient time remains to permit the Commissioner to adjust and recompute the economic index adopted March 5, 1951, for the next four years, in order to give effect to data now available, we think the index may be recomputed. If the Commissioner and the Board determine that the prior release was premature and that a recomputation is necessary in order accurately to calculate the index for each county and to give due consideration to any "sudden marked decline in the economic activity" of any county before the four year index becomes final, we see no reason why it may not be done. That is a matter wholly within the discretion of the Commissioner and the State Board of Education.

Our answer to your second question answers your seventh question.

## SUMMARY

The Foundation School Program Act (Senate Bill 116, ch. 334, Acts 51st Leg., R.S., 1949, Art. 2922-16,

V.C.S.) requires that $45,000,000 be charged annually to districts to be raised locally. The Commissioner of Education, with the approval of the State Board of Education, is authorized and required to recompute a new index every four years using "information from the most recently available official publications and reports of agencies of the State of Texas or the Federal Government," but may consider information as to "a sudden marked decline in the economic activity" in a county from other reliable sources. The Commissioner is not confined to any single publication providing data on the various factors but must use "information from the most recently available official publications and reports" except when, in order to give effect to "sudden marked decline in the economic activity," it is necessary to consider information from other reliable sources.

Yours very truly,

PRICE DANIEL
Attorney General

By Everett Hutchinson
Everett Hutchinson
Executive Assistant

APPROVED:

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

Price Daniel
Attorney General

EH/b